Randy M. Andrus (10392)
**ANDRUS LAW FIRM, LLC**
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2241
Telephone: (801) 535-4645
Email: randy@andrusfirm.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **TIRHAS MITKU;** <br><br> Plaintiff, <br><br> vs. <br><br> **ULTRADENT PRODUCTS, INC.;** **DOES** 1 through 50, inclusive, <br><br> Defendants. | **COMPLAINT FOR DAMAGES** <br><br> **(JURY TRIAL DEMANDED)** <br><br> Case No. 2:19-cv-00414-EJF <br><br> Honorable Judge <br><br> Magistrate Judge Evelyn J. Furse |

**COMES NOW**, Plaintiff, and without waiver of any rights or entitlements, including to amend, allege against Defendants jointly and severally, as follows:

## I. PARTIES AND RELATED PARTIES

1. Plaintiff, **TIRHAS MITKU** (hereinafter "**Plaintiff**" or "**MITKU**") is, and at all times mentioned in this Complaint was, an individual, residing in the State of Utah.

2. Plaintiff is informed, and believes and on that basis alleges that Defendant, **ULTRADENT PRODUCTS, INC.** (hereafter "**Defendants**" or "**ULTRADENT**") is, and at all

times mentioned in this Complaint was, a business entity, located and/or doing business from its registered place of business in Salt Lake County, State of Utah.

3. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50, and therefore sue said Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis, alleges that each Defendant named herein is responsible in some manner for the acts, omissions, and occurrences herein alleged, and that Plaintiff's damages, as hereinafter alleged, were proximately caused by such occurrences. Plaintiff will amend this Complaint to allege the true names and capacities of such Defendants when they are ascertained and based on her rights to conduct discovery.

4. Plaintiff is informed and believes, and on that basis alleges, that each Defendant may or may not have been the agent, servant, and/or employee of each Defendant and may or may not have acted in a concerted conspiracy, pursuant to a common plan, civil conspiracy, or other common and/or integrated enterprise, and that each Defendant may or may not have authorized, ratified, and/or negligently supervised, each act of each Defendant, and that each Defendant is and/or may or may not be the alter ego of each Defendant. Plaintiff is informed and believes and, on that basis, alleges that Defendants were and are responsible for the acts causing Plaintiff's damages. All Defendants are collectively referred to as "Defendants".

## II. JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter by virtue of federal question jurisdiction, including arising under the laws of the United States, including *Title VII of the Civil Rights Act of 1964*, as amended ("*Title VII*"), 42 U.S.C. §§ 2000e-2(a), *et seq.* for employment discrimination, including as amended by *The Pregnancy Discrimination Act of 1978* ("*PDA*")

(Pub.L. 95-555), Section 701 of *The Civil Rights Act of 1964*, subsection (k); *The Americans With Disabilities Act of 1990, 2008* ("*ADA*", "*ADAAA*"), 42 U.S.C. §§ 12101–12213, *et seq.*, as amended by *The Civil Rights Act of 1991*; and *The Family and Medical Leave Act of 1993*, as amended ("*FMLA*"), 29 U.S.C. §§ 2601-2654, *et seq.*, 29 U.S.C. § 2612; all as amended. Jurisdiction is specifically conferred on this Court by the United States Constitution and under its Amendments, including of Equal Protection, and the laws of the United States including the above federal statutes. Equitable and other relief are also sought, including under 42 U.S.C. 2000e(5)(g). The Court also has supplemental and/or ancillary jurisdiction over related pendant claims which also exist. Jurisdiction is also based on 28 U.S.C. §§ 1331, 1343, and 1367.

6.      Venue is proper by virtue of 28 U.S.C. § 1391 as the parties reside; have their principal place of business; are incorporated; have physical presence and the intent to remain indefinitely in Utah and in this District; and/or are subject to jurisdiction in this District as the most significant contacts, events or omissions giving rise to the claims occurred here. The claims and circumstances herein share and arise out of a common nucleus of operative facts.

### III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      On or about July 13, 2017, Plaintiff Tirhas Mitku filed Charges of Discrimination including with the United States Equal Employment Opportunity Commission ("EEOC"), case number 35C-2017-00493.

8.      On or about March 21, 2019, the EEOC issued a Notice of Right to Sue to Plaintiff, attached hereto as **EXHIBIT A**. Plaintiff has exhausted her administrative remedies.

9.      The Complaint in this action was timely filed within the 90-day period specified in the Notice of Right to Sue.

## IV. FACTUAL BACKGROUND AND ALLEGATIONS

10. At all times relevant, including since approximately 2002 to present, Defendant Ultradent is believed to be a domestic for-profit company and enterprise, engaged in interstate commerce with its headquarters and principal place of business located at 505 West 10200 South, South Jordan, Utah 84095.

11. At all times relevant, Ultradent is primarily a manufacturer of dental products which it distributes in various locations including in Utah, North America, and other countries.

12. Since on or about August 1, 2016 to on or about February 20, 2017, a special relationship existed between Ultradent and Ms. Tirhas, including an employer-employee relationship.

13. On or about August 1, 2016, and thereafter, Ms. Mitku and Ultradent entered into express oral and implied contracts, promises and agreements.

14. Among the contracts, promises, agreements, and representations made by Ultradent to Ms. Tirhas, and made to induce her to rely, and upon which she did rely, and enter into the agreements, were promises and representations that Ultradent would not discharge Ms. Tirhas without good, just, or legitimate cause. Ms. Tirhas and Ultradent further agreed that Ms. Tirhas be allowed time, and additional time if needed, to turn in to Ultradent Americans With Disabilities Act papers, including a Medical Inquiry Form, when completed and received from her treating health care providers, all of which was done and turned in to Ultradent on or about February 23, 2017.

15. Ms. Tirhas agreed to be employed by Ultradent and provide her substantial time, talent, skill, experience, knowledge, and industry.

16. Ultradent agreed in exchange, that Ultradent would pay compensation to Ms. Tirhas, including wages, vacation, bonuses, other compensation, reasonable accommodations, and the additional time.

17. Ultradent also agreed that it would not act arbitrarily with Ms. Tirhas.

18. Ultradent also agreed that it would act with mutual consent with Ms. Tirhas.

19. Ultradent also agreed that it would act with mutual respect towards Ms. Tirhas.

20. Prior to February 2017, Ultradent created, approved, and agreed going forward to certain anti-discrimination, anti-harassment, and anti-retaliation policies, including:

- Committing to provide a work environment free from any form of unlawful harassment, discrimination, or retaliation.

- Prohibiting harassment or unlawful discrimination against individuals on the basis of gender or sex.

- Prohibiting harassment or unlawful discrimination against individuals on the basis of pregnancy, prenatal medical care, child birth, maternity and after-birth care.

- Prohibiting harassment or unlawful discrimination against individuals on the basis of disability.

- Prohibiting unwelcomed or derogatory verbal conduct, comments, innuendos, or demeaning slurs, harassment, or questions about an individual's protected characteristics or classes.

- That supervisors and each member of the leadership team, including human resources, be responsible for an atmosphere of respect, free of discrimination and harassment.

21. Ultradent through its agents, including those in human resources, and with a willful mental state and intent to injure, knew or expected that injury would be caused by and the consequences of its actions set forth herein towards those to be protected, namely Ms. Mitku.

22. On or about August 1, 2016, Ms. Mitku, a female then-age 26, began her employment with Ultradent full-time in the position of machine operator.

23. In or about January 2017, Ms. Mitku learned she was pregnant with a due date for her child of in or about September 2017.

24. On or about January 20, 2017, Ms. Mitku reported to Ultradent, including human resources, that she was pregnant.

25. On or about January 20, 2017, Ms. Mitku inquired of Ultradent's human resources, including Carol Pugmire, Ultradent's HR Benefits Manager Coordinator ("Pugmire"), about Ms. Mitku's pregnancy; pending disability; requests for reasonable accommodations; plans for Family and Medical Leave ("FMLA"); and other rights and concerns.

26. On or about January 20, 2017, when Ms. Mitku's inquired, Ultradent, through its agent Ms. Pugmire, intentionally made unwelcomed and offensive verbal demeaning comments and innuendo questioning Ms. Mitku's protected characteristics, including, "IF YOU KNOW YOU ARE GOING TO GET PREGNANT MAYBE ITS BEST TO QUIT WORKING."

27. Following January 20, 2017 and the comments made to her by human resources, Ms. Mitku was subjected to discrimination, harassment, retaliation and denial of her rights.

28. On or about February 2, 2017, Ms. Mitku was able to obtain paperwork for her Americans With Disabilities ("ADA") and for her FMLA leave which she was planning for.

29. In or about January 2017, Ms. Mitku developed disabling medical complications, which worsened into serious medical emergency situations into February and thereafter.

30. Ms. Mitku began suffering from a condition known as hyperemesis gravidarum or "HG". Hyperemesis gravidarum is a pregnancy complication that is characterized by severe nausea, vomiting, weight loss, and possibly dehydration. Signs and symptoms may also include vomiting several times a day and feeling faint. Hyperemesis gravidarum is considered more severe than morning sickness. Often symptoms get better after the 20th week of pregnancy but may last the entire pregnancy duration and may require emergency room attention and hospitalization. Hyperemesis gravidarum is life-threatening.

31. Hyperemesis gravidarum affects the ability to perform basic daily activities. For example, getting out of bed, bathing, taking care of other children, cooking, driving, etc.

32. Ms. Mitku continued to work or call in to report her status to Ultradent with doctor notes for her illness and care.

33. In February 2017, Ms. Mitku underwent medical testing, care and treatment.

34. Desirous of not jeopardizing or losing her employment and related civil rights, Ms. Mitku and her husband reached out to Ultradent and its human resources to coordinate Ms. Mitku's submission of the ADA and FMLA paperwork she had been given.

35. On or about February 14, 2017, Ms. Mitku and her husband again contacted Ultradent, including Ms. Pugmire, advising that the soonest Ms. Mitku could get an appointment to see her primary health care provider was for February 15, 2017. It was explained and discussed as a reasonable accommodation that Ms. Mitku would submit the (ADA/FMLA) paperwork given to her to her primary health care provider. During this discussion, Ultradent,

including through Ms. Pugmire, agreed, promised, and assured Ms. Mitku an open extension of time for Ms. Mitku to see her primary health care provider and to return the paperwork as soon as possible, "no problem".

36. Ultradent, including through Ms. Pugmire, knew of Ms. Mitku's illness; knew of Ms. Mitku's first prenatal appointment with her primary health care provider on February 15, 2017; knew that Ms. Mitku was excused from and would not be at work on February 15, 2017; and knew that Ms. Mitku was excused from work beyond February 15, 2017 pending Ms. Mitku's medical needs, condition, and in having the paperwork completed by and returned from her primary health care provider.  It was understood between Ms. Mitku and Ultradent as an accommodation, that any deadline to return the paperwork was extended given the above.

37. On February 15, 2017, Ms. Mitku, continuing to experience severe pain and sickness, saw her primary health care provider, and Ms. Mitku provided her ADA/FMLA paperwork to her primary health care provider for completion.

38. On February 15, 2017, Ms. Mitku's condition was serious, life-threatening, and an emergency situation, with her being put on emergency IV infusion treatments for her hyperemesis gravidarum complications ("Serious Health Conditions and Disabilities")

39. Over the course of time, including February 15−22, 2017 and thereafter, Ms. Mitku continued in an emergency status and situation with multiple daily IV infusion treatments, care, and medical treatments for her Serious Health Conditions and Disabilities.

40. On February 23, 2017, Ms. Mitku's primary health care provider completed sufficiently its consideration of Ms. Mitku's condition finding that Ms. Mitku had a serious physical impairment and medical condition, hyperemesis gravidarum, which affected and

impaired major life activities including specifically her eating, standing, walking, working; and which affected and impaired major bodily functions including stomach and digestion functions.

41.     On February 23, 2017, Ms. Mitku's primary health care provider completed the ADA/FMLA paperwork, and Ms. Mitku and her husband submitted it back to Ultradent human resources that very same day.

42.     Without Ms. Mitku's knowledge—or any attempt by Ultradent to reach out to Ms. Mitku or her husband, and contrary to the express promises, agreements, and assurances made to Ms. Mitku—Ultradent secretly set out to terminate, and did terminate, Ms. Mitku's employment on or about February 20, 2017, claiming falsely that Ms. Mitku had resigned.  She did not resign.

43.     When Ms. Mitku and her husband found out about the termination, they contacted Ultradent who gave pretextual excuses refusing to honor their commitments or correct matters.

44.     Instead of honoring its promises, agreements, and assurances with Ms. Mitku, Ultradent breached by not allowing Ms. Mitku to perform as Ultradent had represented and agreed while she was pursuing accommodations, treatment, and was pursuing ADA and FMLA rights and options; and denied her reasonable accommodations and an interactive process.

45.     On or about October 10, 2017, Ms. Mitku complained again and offered Ultradent another opportunity to honor their commitments or to correct the matter.  Ultradent refused.

46.     Up to the time of her termination, Ms. Mitku had performed and adhered to all of her requirements and obligations with Ultradent, with no written disciplinary action.

47.     Any conditions, covenants, or promises which Ms. Mitku has not performed were not performed as a result of Ultradent's breaches, refusals, and conduct excusing and preventing any such performance by Ms. Mitku.

48.   Despite the representations, promises, and agreements with Ms. Mitku, Ultradent engaged in continuing gender, pregnancy, and disability discrimination against and harassment towards Ms. Mitku even after she complained.  Ultradent's intentional, willful, and outrageous behaviors and discrimination, harassment, and retaliation, became so unreasonable, intolerable, and caused the altering of the terms, benefits, enjoyments, and conditions of Ms. Mitku's employment resulting in the active and/or constructive wrongful termination adverse action of Ms. Mitku's employment on or about February 20, 2017—all in direct violation of her civil and statutory rights, retaliation, and the express promises made to her.

## V.  CAUSES OF ACTION

### FIRST COUNT

**(Violations of Civil Rights and Statutory Discrimination,
including *Title VII, PDA, ADA*, Gender / Pregnancy / Harassment / Disability / Retaliation)**

49.   Plaintiff incorporates by reference the above allegations as if set forth fully herein.

50.   From on or about August 1, 2016 to on or about February 20, 2017, Ms. Mitku was employed with Defendant Ultradent.

51.   Defendant Ultradent is an employer affecting commerce with more than 501 employees.

52.   During her employment with Ultradent, Ms. Mitku has been members of protected classes, including on the basis of her gender/sex (female, pregnant), pregnancy, child birth, and disability ("Protected Classes") and Serious Health Conditions and Disabilities.

53.   At all times during her employment with Ultradent, Ms. Mitku was qualified for the positions she held and for those positions which have been denied to her.

54. During her employment, Ms. Mitku was objectively and subjectively subjected to gender/sex and pregnancy discrimination, severe and pervasive harassment, hostile work environment, disability discrimination, retaliation, and adverse employment action. All of the above illegal behaviors negatively impacted and altered the terms and conditions of Ms. Mitku's employment, job opportunities, compensation, including based on her Protected Classes and Serious Health Conditions and Disabilities, and she was retaliated against for her protected activities; Ms. Mitku suffered adverse action, including active and/or constructive wrongful termination, all in violation of *Title VII of the Civil Rights Act of 1964*, 42 U.S.C. §§ 2000e-2(a), (k) *et seq. Title VII of the Civil Rights Act of 1964*, as amended ("*Title VII*"), 42 U.S.C. §§ 2000e-2(a), *et seq.* for employment discrimination, including as amended by *The Pregnancy Discrimination Act of 1978* ("*PDA*") (Pub.L. 95-555), Section 701 of *The Civil Rights Act of 1964*, subsection (k); and *The Americans With Disabilities Act of 1990, 2008* ("*ADA*", "*ADAAA*"), 42 U.S.C. §§ 12101–12213, *et seq.*, as amended by *The Civil Rights Act of 1991*, *et seq.*; all as amended

55. Ultradent adopted policies and standards against gender, sex, pregnancy, child birth, and disability discrimination, unlawful harassment, hostile work environment, and retaliation of which Ultradent made promises to its employees and to Ms. Mitku specifically, including those set forth above, which Ultradent violated and breached.

56. Ultradent, including through its agents including Ms. Pugmire, engaged in severe, pervasive, offensive, abusive, and retaliatory conduct to Ms. Mitku, including as described herein, which violates the above statutes and law and Ultradent's own promises, representations, policies and standards—all of which resulted in interference with Ms. Mitku's Constitutional and

civil rights; her employment and work performance; creating a hostile and abusive working environment and resulting in retaliation and wrongful and unlawful termination.

57. Ms. Mitku complained to Ultradent and engaged in protective activities. Following her protected activities, Ms. Mitku was subjected to gender, pregnancy, disability, and other forms of discrimination, harassment, further hostile, abuse, and retaliation, thus violating and denying her rights.

58. Ms. Mitku was treated less favorably than others not in their Protected Classes. Ultradent allowed others, not in Ms. Mitku's Protected Classes, to engage in the same or similar conduct without being treated with adverse action like Ms. Mitku was.

59. Ms. Mitku is informed, believes and on that basis alleges that persons not in her same Protected Classes were treated more favorably than she was, and were not treated like Ms. Mitku was subjected to, nor was Ms. Mitku afforded reasonable accommodations.

60. Although qualified for her position, Ms. Mitku was subjected to disparate treatment and disparate impact discrimination, and tangible adverse employment action when she was actively discriminated against, subjected to a hostile work environment, harassed, and denied job advantages, retaliated against, and terminated from her positions at Ultradent.

61. Ms. Mitku engaged in protected activities including with each of her complaints; however, she was retaliated against, subjected to adverse action, put in fear of reprisal, distraught, and subjected to adverse action because of and with the motivating factors being her Protected Classes status.

62. As a result of Ultradent's actions and willful violation of each of her rights, Ms. Mitku has suffered irreparable injuries, including but not limited to loss of pay, compensation

and other economic losses; and is entitled to recover damages and relief, for emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, loss of enjoyment of life, and other physical, mental, and intangible injuries for all of which she should be compensated, as well as for liquidated and punitive damages, *Eshelman* damages, pre-judgment and post-judgment interest, attorney fees, and costs, the exact amount to be shown at trial.

**WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## SECOND COUNT
### (Willful Breach and Violation of Statutory and Obligations - *FMLA*)

63.     Plaintiff incorporates by reference the above allegations as if set forth fully herein.

64.     Ms. Mitku was an eligible, full-time employee whom Defendant Ultradent, employed or would have employed for over one year at the time of her child birthing in September 2017, and whom had or would have worked in excess of 1,250 hours during the 12-month period previous, including previous to September 2017 if it were not for Ultradent's bad faith denial and interference with Ms. Mitku's FMLA rights and retaliation for exercising them.

65.     On February 20, 2017 and in September 2017, Ultradent had over 50 employees (in 20 or more workweeks in the calendar years 2016 and/or 2017) within a 75-mile radius of Ms. Mitku's worksite which included Ultradent's worksite at 505 West 10200 South, South Jordan, Utah 84095.

66.     Additionally, and as a separate basis, Ultradent engaged in further protected activity and had an agreed-upon and recognized Family Medical Leave policy of its own for its employees, including for Ms. Mitku.

67. Ultradent recognizes FMLA's allowance for a 12-week leave of absence for serious injuries and medical conditions, including pregnancy, prenatal medical care, child birth, and after-birth care, such as Ms. Mitku's, and her Serious Health Conditions and Disabilities.

68. In or about January 2017, and thereafter, Ms. Mitku spoke with, made requests, and sought assistance from Ultradent, including for her pregnancy, prenatal medical care, child birth, maternity and after-birth care. During those conversations, Ms. Mitku informed Ultradent that she was under the care of her health care providers. Ms. Mitku informed Ultradent that she would seek further treatment, care, and advice from her health care providers and would return to her position. Ultradent acknowledged Ms. Mitku's FMLA plans but willfully violated them.

69. Rather than fulfill the requested, approved and agreed-upon leave with Ms. Mitku, Ultradent willfully engaged in an intentional breach and unlawful adverse action, including termination of Ms. Mitku, all in violation of the agreements, promises, and assurances made by Ultradent as to Ms. Mitku's FMLA rights and her protected activities.

70. As a result of Ultradent's actions and willful violations of *The Family and Medical Leave Act of 1993* ("*FMLA*"), 29 U.S.C. §§ 2601-2654, *et seq.*, 29 U.S.C. § 2612 and Ultradent's own FMLA policy, Ms. Mitku has suffered irreparable injuries, including but not limited to lost compensation and other economic losses; and is entitled to recover damages and relief including reinstatement, for emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated, as well as for liquidated and punitive damages, *Eshelman* damages, pre-judgment and post-judgment interest, attorney fees, and costs in the exact amount to be shown at trial.

**WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## THIRD COUNT

### (Breach of Contracts and Wrongful Termination
### Breach of the Covenant of Good Faith and Fair Dealing)

71. Plaintiff incorporates by reference the above allegations as if set forth fully herein.

72. On or about August 1, 2016, and thereafter including on or about February 14, 2017, for valuable consideration, Ms. Mitku and Ultradent, intended, communicated and entered into express oral and implied contracts through offer and acceptance, including that Ms. Mitku would be employed by Ultradent and provide her time, talent, skill, experience, knowledge, and industry.  Ultradent agreed in exchange that Ms. Mitku be paid compensation, including wages, sick leave, vacation, bonuses, and other compensation; Ultradent also intended, communicated and agreed it would not discharge Ms. Mitku without good, just, or legitimate cause; that Ms. Mitku was excused from and would not be at work on February 15, 2017; and that Ms. Mitku was excused from work beyond February 15, 2017 pending Ms. Mitku's medical attention in having the paperwork completed by and returned from her primary health care provider and that as an accommodation, any deadline to return the ADA/FMLA paperwork was extended given the circumstances Ms. Mitku was experiencing; that Ultradent would act honestly and not act arbitrarily with Ms. Mitku; and that Ms. Mitku and Ultradent would act with mutual consent.

73. As further agreements and promises, in or about February 2017, Ms. Mitku and Ultradent agreed that Ms. Mitku would take some time off work for pregnancy, medical, child birth and maternity purposes.  Ms. Mitku relied on the promises made to her by Ultradent.

74. On or about February 20, 2017, Ultradent breached the express oral and implied contracts with Ms. Mitku, including the implied-by-law covenant of good faith and fair dealing, by arbitrarily, and in bad faith, terminating Ms. Mitku's employment, and desiring in a deceitful,

retaliatory, and unlawful manner to get rid of Ms. Mitku; claiming falsely and in a bad faith denial and pretextual manner that she had resigned; and refusing to honor the express oral and implied contracts; and stonewalling Ms. Mitku.

75. Ms. Mitku has performed satisfactorily all conditions and covenants required of her under said contracts. Any conditions, covenants, or promises which Ms. Mitku has not performed were not performed as a result of said Ultradent's breaches and conduct excusing and preventing any such performance by Ms. Mitku.

76. As a direct and proximate result of Ultradent's breaches of contracts, Ms. Mitku has suffered and will continue to suffer damages, the exact amount of which has not yet been fully ascertained, but is within the jurisdiction of this Court, and includes the above sums, together with pre-judgment and post-judgment interest.

77. Ms. Mitku is entitled to and demands relief, including compensatory and consequential damages, including, but not limited to, damages stemming from breaches of contract, including Ultradent's breaches of the implied-by-law covenant of good faith and fair dealing, compensation, lost income, and other expenses, and pre-judgment and post-judgment interest, attorney fees, and costs in the exact amount to be shown at the time of trial.

**WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## FOURTH COUNT
**(Intentional Infliction of Emotional Distress)**

78. Plaintiff incorporates by reference the above allegations as if set forth fully herein.

79. Additionally, separately, apart from, standing alone, and/or alternatively from any employment discrimination, retaliation, and/or any *Title VII*, *PDA*, *ADA, FMLA* and other claims

in the First, Second, and Third Counts, Ultradent also engaged in willful, intentional, atrocious, intolerable, and so extreme and outrageous conduct towards Ms. Mitku as to exceed the bounds of decency.

80. Ultradent acted willfully and with the intent to injure and inflict emotional distress, wantonly, or at a minimum acted with reckless disregard of the probability of causing emotional distress when it was certain or substantially certain that emotional distress would result from their conduct towards Ms. Mitku.

81. Ultradent acted knowingly, intentionally (not accidentally), and/or purposefully, and sought to, and did harm and injure Ms. Mitku, causing, and which continues to cause, her to suffer emotional distress, physical and emotional anguish, fear, and injury that is so severe that no reasonable person could be expected to endure it.

82. As a direct and proximate result of the aforementioned actions by Ultradent, Ms. Mitku has sustained and will sustain injury damages including:

    a. extreme and severe pain and suffering, both physical and mental;

    b. economic damages, including bills and expenses for medical care and mental health counseling that Ms. Mitku required and will require in the future;

    c. a diminution in the ability and capacity to work, earn money and perform household and other services in the future; and

    d. non-economic damages, including a loss of enjoyment of life.

**WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## VI.  PUNITIVE AND LIQUIDATED DAMAGES

**(Willful, Wanton, Malicious, Intent to Injure, Knowingly Reckless and/or Indifferent Conduct)**

83. Plaintiff incorporates by reference the above allegations as if set forth fully herein.

84. As to those Counts allowing punitive damages against Ultradent, whether under *Title VII*, *PDA*, *ADA*, *FMLA* or otherwise, Ms. Mitku is informed, believes, and on that basis alleges, that the conduct of Ultradent was willful, wanton, malicious and/or reckless and/or with the intent to injure and/or knowing with reckless indifference toward, with knowledge of and a disregard of the *Title VII*, *PDA*, *ADA*, *FMLA*, and other civil rights of Ms. Mitku.  Ultradent either intended to cause harm or, at a minimum, were recklessly indifferent to the injury that would likely result from their acts and omissions.  Ultradent took actions and behaviors directed against Ms. Mitku with the intent and specific mental state to injure her all with a knowing, conscious, and deliberate intent with the knowledge, purpose and expectation of inflicting injury upon Ms. Mitku as a consequence.  Ultradent's despicable conduct was done maliciously, fraudulently, and oppressively with a conscious, reckless, willful, and/or callous disregard of the probable detrimental consequences to Ms. Mitku, and knowing that Ultradent's conduct was substantially certain to vex, annoy, and injure Ms. Mitku, and entitling Ms. Mitku to punitive damages in an amount appropriate to punish or set an example of Ultradent.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment against each of the Defendants, jointly, severally, and individually:

**As to the First Count for Violations of Civil Rights and Statutory Discrimination, including *Title VII, PDA,* and *ADA* (Gender / Pregnancy / Harassment / Hostile Work Environment / Retaliation) against Defendants:**

1. For general damages according to proof;

2. For special and compensatory damages in a sum according to proof;

3. For back pay and future pay;

4. For equitable, declaratory, injunctive relief, including reinstatement;

5. For liquidated and punitive damages in an amount sufficient to punish Defendants;

6. For pre-judgment and post-judgment interest at the maximum rate allowed by law;

7. For attorney fees, costs, and expenses incurred herein;

8. For *Eshelman* damages; and

9. For such other and further relief as the Court deems just and proper.

**As to the Second Count for Willful Breach and Violation of Statutory and Obligations, including *FLMA* against Defendants:**

1. For general damages according to proof;

2. For special and compensatory damages in a sum according to proof;

3. For back pay, reinstatement, and future pay;

4. For liquidated and punitive damages in an amount sufficient to punish Defendants;

5. For pre-judgment and post-judgment interest at the maximum rate allowed by law;

6. For attorney fees and costs incurred herein;

7. For costs incurred herein; and

8. For such other and further relief as the Court deems just and proper.

**As to the Third Count for Breach of Contracts, including Breach of the Covenant of Good Faith and Fair Dealing, against Defendants:**

1. For compensatory and consequential damages;

2. For damages stemming from breaches of contracts;

3. For pre-judgment and post-judgment interest at the maximum rate allowed by law;

4. For attorney fees if permitted by law and costs of suit incurred herein; and

5. For such other and further relief as the Court deems just and proper.

**As to the Fourth Count for Intentional Infliction of Emotional Distress against Defendants:**

1. For general damages according to proof;

2. For special and compensatory damages in a sum according to proof;

3. For punitive damages in an amount sufficient to punish Defendants;

4. For pre-judgment and post-judgment interest at the maximum rate allowed by law;

5. For costs incurred herein; and

6. For such other and further relief as the Court deems just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands and exercises her Constitutional rights to a jury trial.

DATED this 17th day of June 2019        ANDRUS LAW FIRM, LLC

BY: /s/ Randy M. Andrus
**RANDY M. ANDRUS**
*Attorney for Plaintiff*
**TIRHAS MITKU**