## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **TIRHAS MITKU,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:19-cv-00414-HCN-JCB** |
| **ULTRADENT PRODUCTS, INC.; and DOES 1 through 50, inclusive,** | **District Judge Howard C. Nielson, Jr.** |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

This case was referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Plaintiff Tirhas Mitku's ("Ms. Mitku") short form discovery motion.[2] Based upon the analysis set forth below, the court grants in part and denies in part Ms. Mitku's motion and orders Defendant Ultradent Products, Inc. ("Ultradent") to produce the 9 emails indicated on Exhibit A to this Order. The deposition of Ultradent's expert, Jeremy Sharpe ("Mr. Sharpe"), must be completed within 45 days of this Order, and expert discovery will be extended 45 days along with all other unexpired deadlines in the current scheduling order.

## **BACKGROUND**

On October 27, 2021, Ms. Mitku issued a subpoena under Fed. R. Civ. P. 45 to Mr. Sharpe seeking various documents. Relevant here is Ms. Mitku's second request in the

---

[1] ECF Nos. 14, 20.

[2] ECF No. 36.

subpoena's attachment, which sought, among other things, "[a]ll 'documents[,'] 'writings[,'] and other items or evidence reviewed or received by you in this matter, including any documents, letters, emails obtained from [Ultradent's] attorneys."[3] Ultradent's counsel objected on Mr. Sharpe's behalf to that request "to the extent it calls for documents considered privileged and protected from disclosure, including those in Rule 26(b)(3) and 26(b)(4) of the Federal Rules of Civil Procedure."[4] Ultradent's counsel then stated that despite its objection, Mr. Sharpe does not have any non-privileged documents that were not already disclosed in his expert report or as part of prior discovery productions in this case. Counsel did not mention where those documents were located in the prior discovery productions, but, instead, counsel stated that all responsive documents were specifically referenced in Mr. Sharpe's expert report as "documents reviewed."[5]

Mr. Sharpe's expert report listed 15 documents that he reviewed prior to issuing his report. However, only 4 of those listed documents included Bates numbers showing the documents' location in discovery. The remaining 11 documents in Mr. Sharpe's document list consist of names that Mr. Sharpe gave to various documents. Although some of those names leave no doubt as to which document Mr. Sharpe consulted in the mass of discovery (e.g., "Deposition of Randal O'Rourke"), others are far less readily identifiable (e.g., "Email discussing the no-show dates").[6] As to those documents that were not readily identifiable in Mr.

---

[3] ECF No. 36-1 at 4 of 10.

[4] ECF No. 36-2 at 4 of 8.

[5] *Id*.

[6] ECF No. 36-5 at 3 of 3.

Sharpe's list, Ms. Mitku's counsel sought greater specificity as to which documents Mr. Sharpe was referring. Additionally, Ms. Mitku's counsel sought communications between counsel and Mr. Sharpe that: (1) related to Mr. Sharpe's compensation, (2) disclosed facts or data that Mr. Sharpe considered, and (3) identified assumptions on which Mr. Sharpe relied in forming his opinion.[7] Ultradent's counsel agreed to provide the documents that Mr. Sharpe listed in his report so that there would be no doubt as to what Mr. Sharpe consulted, but Ultradent's counsel refused to provide communications between them and Mr. Sharpe. Instead, Ultradent produced a privilege log asserting that the emails thereon were protected by attorney-client privilege, work-product protection, and expert-attorney protection under Fed. R. Civ. P. 26(b)(4)(C).

While all these discussions were occurring, the parties agreed that Mr. Sharpe would be deposed on December 9, 2021. However, counsel for Ms. Mitku called off the deposition just prior to the agreed-upon date because—according to Ms. Mitku's counsel—Mr. Sharpe had not adequately complied with the subpoena. Therefore, Ms. Mitku's counsel claimed that he could not adequately prepare for Mr. Sharpe's deposition given that he (1) did not know where all the documents that Mr. Sharpe consulted were in the discovery and (2) was missing the communications between Mr. Sharpe and counsel that are not subject to Rule 26 protection.

---

[7] The court acknowledges that the plain language of Ms. Mitku's subpoena request appears to ask for all communications between Mr. Sharpe and Ultradent's counsel. However, subsequent discussions between counsel limited the request to material that is not subject to work-product protection under Fed. R. Civ. P. 24(b)(4). What is and what is not covered under this work-product protection is discussed in greater detail below.

The day *after* Mr. Sharpe's deposition was supposed to occur, Ultradent's counsel provided copies of the documents that Mr. Sharpe considered as listed in his report. However, Ultradent's counsel persisted in not producing their communications with Mr. Sharpe.

On December 17, 2021, Ms. Mitku filed the instant short-form motion seeking: (1) production of the non-privileged communications between Ultradent's counsel and Mr. Sharpe; and (2) an extension of the discovery cutoff to depose Mr. Sharpe, which, if granted, would require an extension of other deadlines in the current scheduling order.[8] The court heard oral argument on the motion on December 29, 2021, and, in that hearing, ordered Ultradent's counsel to produce its communications with Mr. Sharpe to the court so that the court could review them *in camera*.[9] Ultradent's counsel provided the court with 56 email communications along with their attachments. The attachments have already been produced to Ms. Mitku. Therefore, the only question remaining for the court to consider is whether the email communications themselves are privileged or otherwise protected from disclosure.

For the reasons stated below, the court finds that 9 of the 56 emails should be disclosed because they identify facts or data that Ultradent's counsel provided to Mr. Sharpe, which he considered in rendering his opinions. Although the contents of these 9 emails reveal little, their now-required production and the late identification of the documents on December 10 that Mr. Sharpe reviewed prior to producing his expert report warrant a modest extension of time to depose Mr. Sharpe. However, no other discovery will be allowed. This modest and limited

---

[8] ECF No. 36.

[9] ECF No. 40.

discovery extension has the ripple effect of requiring an extension of the remaining dates in the current scheduling order. Each issue is discussed in order below.

## ANALYSIS

I.      **NONE OF THE DOCUMENTS REVIEWED *IN CAMERA* ARE ATTORNEY-CLIENT PRIVILEGED, BUT 47 OUT OF 56 DOCUMENTS ARE PROTECTED UNDER THE EXTENSION OF THE WORK-PRODUCT DOCTRINE THAT RULE 26(b)(4)(C) PROVIDES.**

Ultradent's emails are not attorney-client privileged, but all but 9 emails are protected under Rule 26(b)(4)(C)'s work-product protection. Rule 45(e)(2)(A) provides that a subpoena respondent asserting a privilege must: (1) "expressly make the claim; and" (2) provide a privilege log. Here, Mr. Sharpe's response to Ms. Mitku's subpoena did not assert attorney-client privilege; it asserted that certain documents were "privileged and protected from disclosure, including those described in Rule 26(b)(3) and 26(b)(4) of the Federal Rules of Civil Procedure."[10] But Ultradent later produced a privilege log, which specifically asserted attorney-client privilege, work-product protection, and attorney-expert protection under Rule 26(b)(4)(C). These privilege and protection claims need to be unpacked before addressing them on their merits.

Although there are a few cases to the contrary, prior to the 2010 amendments to Rule 26(b)(4), the overwhelming majority of courts and the advisory committee notes to the 1993 amendments to Rule 26 clearly indicate that attorney-client privilege and work-product

---

[10] ECF No. 36-2 at 4 of 8.

protection did not apply to communications shared between counsel and a testifying expert.[11] Indeed, prior to the 2010 amendments to Rule 26, communications between counsel and a testifying expert were generally discoverable despite assertions of attorney-client privilege or work-product protection.[12] This absence of attorney-client privilege or work-product protection for attorney communications with a testifying expert necessitated the 2010 amendments to Rule 26(b)(4), which extended "work-product protection"—but not attorney-client privilege—to those communications.[13] Thus, the only avenue for protecting communications between Ultradent's counsel and a testifying expert like Mr. Sharpe is the work-product protections now afforded under Rule 26(b)(4)(C). Given that the communications at issue here are between a testifying expert and Ultradent's attorneys, attorney-client privilege does not apply. Consequently, the court discusses only work-product protection below.

Even though Ultradent's attorneys asserted *both* work-product protection *and* protection under Rule 26(b)(4)(C) for the emails at issue here, asserting both types of protection is

---

[11] *See, e.g.*, *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375-76 (Fed. Cir. 2001) ("Thus, because any disclosure to a testifying expert in connection with his testimony assumes that privileged or protected material will be made public, there is a waiver to the same extent as with any other disclosure." (citation omitted)). The court emphasizes that this line of cases applies to testifying experts and not those experts who are hired to help the attorney provide legal advice. *See generally* Edna Selan Epstein, *Attorney-Client Privilege & the Work-Product Doctrine*, vol. I § IIIE2.D (6th ed. 2017).

[12] *See generally* *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 462-64 (E.D. Pa. 2005) (discussing courts' views of the protected status of communications between testifying experts and attorneys).

[13] Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment ("Rule 26(b)(4)(C) is added to provide *work-product protection* for attorney-expert communications regardless of the form of the communications . . . .") (emphasis added)).

redundant because work-product protection is exactly what Rule 26(b)(4)(C) provides.[14] Unlike privileges, work-product protection is a creation of the Federal Rules of Civil Procedure.[15] Under Rule 26(b)(4)(C), all attorney-expert communications are protected unless they: (1) pertain to compensation; (2) identify attorney-provided facts or data that the expert considers; or (3) identify attorney-provided assumptions on which the expert relies.[16] The court focuses below on exception (2) because, after *in camera* review, none of the allegedly protected emails discusses compensation or contains attorney-provided assumptions on which Mr. Sharpe relied.

Although neither party disputes that Ultradent's attorneys provided Mr. Sharpe with documents to review, the parties dispute whether Mr. Sharpe "considered" counsel's emails or only the documents attached to counsel's emails. This dispute highlights a distinction without any meaningful difference under Rule 26.

Rule 26(b)(4)(C) protects "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications" unless the attorney-expert communication identifies "facts or data that the party's attorney provided and that the expert considered in forming the opinions to be

---

[14] *Id.*

[15] *See, e.g., Murphy v. Gorman*, 271 F.R.D. 296, 311 (D.N.M. 2010) ("Because the work-product doctrine is a qualified immunity set forth in the Federal Rules of Civil Procedure, and not a privilege like the attorney-client privilege, the exceptions to the attorney-client privilege developed in the common law do not necessarily overcome the protections the work-product doctrine provides.").

[16] Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii).

expressed."[17] The advisory committee notes to the 1993 amendments to Rule 26 further

elaborate the scope of "considered" in the context of expert review. Specifically, the advisory

committee note provides:

> The report is to disclose the data and other information considered
> by the expert . . . . Given this obligation of disclosure, litigants
> should no longer be able to argue that materials furnished to their
> experts to be used in forming their opinions—whether or not
> ultimately relied upon by the expert—are privileged or otherwise
> protected from disclosure when such persons are testifying or being
> deposed.[18]

Simply stated, if an attorney provides materials to an expert, the expert is deemed to have

"considered" the attorney-provided material even if the expert did not rely on them.[19]

Although this advisory committee note's elaboration of the term "considered" is in the

context of what an expert must disclose in an expert report under Rule 26(a)(2)(B), the court

does not see any textual or practical reason to interpret "considered" in Rule 26(a)(2)(B)

differently than the term is used in Rule 26(b)(4)(C). Indeed, where, as here, a rule uses the same

word (i.e., "considered") in the same context (i.e., expert disclosures), the court must presume

that the word carries a consistent meaning.[20] Therefore, where a communication from counsel

---

[17] Fed. R. Civ. P. 26(b)(4)(C)(ii).

[18] Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment.

[19] *See, e.g., TV-3 Inc. v. Royal Ins. Co. of Am.*, 193 F.R.D. 490, 492 (S.D. Miss. 2000) ("We further interpret the word 'considered' as . . . it is intended to encompass: (a) all documents and oral communications relied upon by the experts in formulating their opinions; and (b) all documents and oral communications reviewed by the experts in connection with the formulation of their opinions, but ultimately rejected or not relied upon.").

[20] *Lawson v. FMR LLC*, 571 U.S. 429, 459 (2014) ("[P]arallel text and purposes counsel in favor of interpreting . . . provisions consistently.").

identifies "facts or data" to an expert, the expert will be deemed to have considered it, which requires the disclosure of that attorney-expert communication.

9 of the 56 emails at issue here contained facts or data in the form of attachments that Ultradent's counsel provided to Mr. Sharpe. Exhibit A attached to this Order identifies which emails contained these attorney-provided facts or data and, therefore, should be disclosed. Because several of the 56 emails are email chains that build on each other over time, if the court deemed a previous email protected, its later inclusion in a subsequent email is also protected. By illustration, if email 1 is protected, its protected status remains even if it also appears in emails 2, 3, and 4, and, consequently, redacting the protected emails from those emails that are not protected is appropriate. Ultradent's counsel must produce these 9 unprotected emails to Ms. Mitku within 14 days of this Order.

The remaining 47 emails, however, do not identify any facts or data and, as previously stated, neither mention compensation nor provide assumptions on which Mr. Sharpe relied. Therefore, the remaining 47 communications are protected as work product under Rule 26(b)(4)(C).

## II.      TO ACCOMMODATE THE DEPOSITION OF MR. SHARPE, THE EXPERT DISCOVERY CUTOFF IS EXTENDED 45 DAYS AS ARE ALL REMAINING DEADLINES.

Given that Ms. Mitku will receive the aforementioned 9 emails with 14 days and because Ms. Mitku received specific identification of the documents that Mr. Sharpe considered *after* the scheduled date for Mr. Sharpe's deposition, extending the expert discovery cutoff to allow for

Mr. Sharpe's deposition is warranted. However, Mr. Sharpe's deposition will be the only discovery that will be allowed. That deposition must be completed within 45 days of this Order, or by February 28, 2022. Because the expert discovery cutoff is extended to February 28, 2022, all remaining deadlines in the scheduling order are also extended as follows:

- Deadline for filing dispositive or potentially dispositive motions is March 28, 2022.

- Deadline for filing partial or complete motions to exclude expert testimony is March 28, 2022.

- Deadline for filing a request for a scheduling conference with the District Judge for the purpose of setting a trial date if no dispositive motions are filed is April 4, 2022.

- If dispositive motions are filed and the District Judge's ruling on those motions does not resolve the case, the parties shall file a request for a scheduling conference with the District Judge for the purpose of setting a trial date no later than one week after the ruling on dispositive motions.

## <u>CONCLUSION AND ORDER</u>

For the reasons stated above, Ms. Mitku's short form discovery motion[21] is GRANTED IN PART and DENIED IN PART, and IT IS HEREBY ORDERED:

1. Counsel for Ultradent must provide the 9 emails shown in Exhibit A to Ms. Mitku within 14 days of this Order. The remaining 47 emails are protected under the work-product doctrine.

---

[21] ECF No. 36.

2.     The expert discovery cutoff is extended to February 28, 2022, to allow Ms. Mitku to depose Mr. Sharpe.

3.     The remaining deadlines in the scheduling order are commensurately extended as shown above.

4.     Where, as here, a court grants a motion to compel in part and denies it in part, the court "may" apportion the reasonable expenses for the motion to compel.[22] The court declines to do so because the arguments of counsel were substantially justified and, in any event, other circumstances make an award of fees unjust because the 9 emails that are ordered produced provide very little information other than mentioning that an attachment is included. Although the rule requires disclosure, what will be gleaned from these emails is of minimal consequence to this litigation, which militates against an award of fees.

IT IS SO ORDERED.

DATED this 14th day of January 2022.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[22] Fed. R. Civ. P. 37(a)(5)(C).